IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WINSTONS HERNANDEZ-LUGO, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-25-3434 |
| PAMELA BONDI, et al., | * | |
| Respondents. | * | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Winstons Hernandez-Lugo's ("Hernandez-Lugo" or "Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Pamela Bondi, Kristi Noem, Todd M. Lyons, and Nikita Scott's (collectively, "the Government" or "Respondents") Motion to Dismiss (ECF No. 12). The Motion is fully briefed, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant the Petition for Writ of Habeas Corpus in part and deny it in part, and the Court will deny the Government's Motion to Dismiss.

## I.   BACKGROUND

### A.   Factual Background

Petitioner Winstons Hernandez-Lugo is a native and citizen of Venezuela. (Pet. Writ Habeas Corpus ["Pet."] ¶ 1, ECF No. 1).[1] Immigration officers paroled him into the United States in July 2022. (Id. ¶ 2). He is married to a U.S. citizen, and his spouse is a U.S. Army

---

[1] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Veteran. (Id. ¶ 21; Pet'r's Opp'n Resp'ts' Mot. Dismiss ["Opp'n"] at 2, ECF No. 13). In the two years since he was permitted to enter the United States, he has complied with the conditions of his parole. (Pet. ¶ 22). He has multiple affirmative applications pending with U.S. Citizenship and Immigration Services ("USCIS"), including an asylum application and an application for adjustment of status based on his marriage to a U.S. citizen. (Id. ¶¶ 20–21). Respondents do not allege that Petitioner has any criminal history or convictions.

On October 15, 2025, U.S. Immigration and Customs Enforcement ("ICE") officials detained Hernandez-Lugo when he reported to ICE for a check-in. (Id. ¶ 23). ICE officials then took him into custody at the Baltimore ICE Holding Cells and served him with a Form I-200 Warrant for Arrest of Alien ("Warrant") and Form I-862 Notice to Appear ("NTA") in the Hyattsville Immigration Court. (Id. ¶¶ 23–24; Warrant at 4, ECF No. 1-2; NTA at 15–17, ECF No. 1-2). The NTA states that Hernandez-Lugo is "an alien present in the United States who has not been admitted or paroled" and charges him under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for not being in possession of valid entry or travel documents. (NTA at 15, 17). The next day, on October 16, 2025, Respondents transferred Hernandez-Lugo to an ICE facility in California City, California. (Resp'ts' Answer & Mem. L. Supp. Mot. Dismiss ["Answer"] at 5, ECF No. 12-1).

**B.**   **Procedural History**

On October 17, 2025, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this Court. (ECF No. 1). On November 4, 2025, Petitioner had a bond

2

hearing in the Adelanto, California Immigration Court, where the Immigration Judge ("IJ") denied him bond because the Immigration Court "does not have jurisdiction to set bond pursuant to Matter of Yajure Hurtado." (Nov. 4, 2025 Order Immigration Judge ["Bond Denial"] at 2, ECF No. 13-1). On November 5, 2025, Respondents submitted a consolidated Answer to the Petition and Motion to Dismiss. (ECF No. 12). On November 13, 2025, Petitioner submitted his Opposition. (ECF No. 13).

## II. DISCUSSION

### A. Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243; see also Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *2 (E.D.Mich. Sept. 9, 2025) (explaining relevant standard of review in habeas cases).

### B. Analysis

#### 1. Jurisdiction

The Court will first address jurisdiction. Respondents argue that this Court does not have subject matter jurisdiction over these claims. (Answer at 5–7). Contrary to Respondents' argument, however, Petitioner is not simply bringing an Administrative Procedure Act claim. (Id. at 7). Petitioner, instead, is challenging his ongoing detention under an authority that he alleges to be unlawful, (see Pet. ¶¶ 26–34), which this Court has

3

the authority to review, see Maldonado de Leon v. Baker, No. TDC-25-3084, 2025 WL 2968042, at *4 (D.Md. Oct. 21, 2025) (finding Court has jurisdiction to review habeas petition challenging detention during pendency of immigration proceedings).

The Government further argues that 8 U.S.C. § 1252(b)(9) bars judicial review. (Answer at 10–11). Section 1252(b)(9), however, bars judicial review of issues "arising from" removal proceedings and orders rather than custody determinations. See Leal-Hernandez v. Noem, No. JRR-25-02428, 2025 WL 2430025, at *6 (D.Md. Aug. 24, 2025). Moreover, the Supreme Court has rejected an overinclusive interpretation of § 1252(b)(9) that encompasses custody determinations. Maldonado de Leon, 2025 WL 2968042, at *3 (citing Jennings v. Rodriguez, 583 U.S. 281, 293–95 (2018)). Because this case concerns a custody determination, the Court finds that it has jurisdiction to review Hernandez-Lugo's Petition and agrees with other district courts that have reached the same conclusion. See, e.g., Leal-Hernandez, 2025 WL 2430025, at *5–6 (rejecting government's argument that § 1252(b)(9) functions as judicial bar and noting that "[n]one of the cases on which the Government relies bears remote relevant relation to this habeas action – not the facts, not the procedural posture, and not the relief requested"). Accordingly, for all these reasons, the Court finds it has jurisdiction to review this Petition.

### 2. Administrative Exhaustion

The Court next turns to administrative exhaustion. No applicable statute or rule mandates administrative exhaustion in these circumstances; therefore, "sound judicial discretion governs." Miranda v. Garland, 34 F.4th 338, 351 (4th Cir. 2022) (quoting McCarthy v. Madigan, 503. U.S. 140, 144 (1992)).

"To determine whether requiring exhaustion is appropriate, 'federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion.'" Maldonado de Leon, 2025 WL 2968042, at *4 (quoting McCarthy, 503 U.S. at 146). "[I]nstances in which an individual's interest heavily outweighs exhaustion are when an administrative agency is shown to have 'predetermined the issue before it,' and when there is an 'unreasonable or indefinite timeframe for administrative action.'" Id. at *4 (quoting McCarthy, 503 U.S. at 146–48).

Here, there is no reason to require prudential exhaustion or exhaustion of administrative remedies in this Court's discretion. As both parties have recognized, the Board of Immigration Appeals ("BIA") has recently issued a precedential decision, Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), that divests IJs of jurisdiction to hold bond hearings for noncitizens who were not lawfully admitted because the BIA determined that all such noncitizens are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Id. at 228. Hernandez-Lugo already requested and was granted a bond hearing in front of an IJ, and the IJ denied bond due to the IJ's finding that the Immigration Court "does not have jurisdiction to set bond pursuant to Matter of Yajure Hurtado." (Bond Denial at 2). This request was exactly what this Court recently recognized "would be an exercise in futility, as the result of such administrative proceedings [had] already been 'predetermined.'" See Pineda Velasquez v. Noem, GLR-25-3215, 2025 WL 3003684, at *2 (quoting McCarthy, 503 U.S. at 148).

Furthermore, as this Court has found before, "where administrative processes may result in undue delay, a court may properly consider that as a factor militating against requiring exhaustion." Leal-Hernandez, 2025 WL 2430025, at *12 (citing McCarthy, 503 U.S. at 146–47). This Court could require Hernandez-Lugo to exhaust administrative remedies, including BIA review, until further judicial review by a U.S. Court of Appeals; however, "the timeframe required to pursue all those steps would be 'unreasonable' because with the passage of time, the allegedly improper detention would continue to occur and could not be meaningfully undone." Maldonado de Leon, 2025 WL 2968042, at *4 (quoting McCarthy, 503 U.S. at 147). Petitioner's continued detention under 8 U.S.C. § 1225(b)(2) will result in him being detained until the end of his removal proceedings or an appeal to a court of appeals, a process that could take months or even years and would result in a miscarriage of justice if the proper detention authority were § 1226(a).

If Hernandez-Lugo is correct that he should be detained under 8 U.S.C. § 1226(a), then he is entitled to a meaningful bond hearing and may be released from custody. 8 U.S.C. § 1226(a)(2)(a). This issue, therefore, is ultimately a matter of statutory interpretation: to decide whether he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) or discretionary detention under 8 U.S.C. § 1226(a). (Answer at 7). Matters of statutory interpretation are within the sound province of the judiciary. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385 (2024) (citing Marbury v. Madison, 5 U.S. 137, 177 (1803)). This Court thus finds waiver of the requirement to exhaust administrative remedies appropriate. This Court will not compel Hernandez-Lugo to pursue further administrative remedies before seeking habeas relief and now turns to the merits of his claims.

3.     **Applicability of Section 1226(a)**

The Government cites a variety of provisions to support Hernandez-Lugo's ongoing detention and rejects that § 1226(a) is the lawful authority, without specifying which provision it contends is the controlling authority. (See Answer at 12–14) (referencing 8 U.S.C. §§ 1225(b)(1)–(2) and 1231(a)). The Court will therefore review the relevant provisions to determine which statute is the lawful authority here.

a.     **Inapplicability of § 1225(b)(1)**

For the reasons set forth below, the Court first finds that § 1225(b)(1) does not govern Petitioner's detention. Under § 1225(b)(1), two groups of people are subject to mandatory detention and expedited removal:

> If an immigration officer determines that an alien . . . <u>who is arriving in the United States</u> or <u>is described in clause (iii)</u> is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added). An individual described in clause (iii) and subject to this provision is:

> [a]n alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II). All individuals subject to this provision who do not manifest a fear of persecution or intention to apply for asylum are summarily removed via "expedited removal," without further hearing or review. 8 U.S.C. § 1225(b)(1)(B)(iii). The

7

provision states that those who do manifest a fear of persecution "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

Section 1225(b)(1) is aptly titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." As stated, for mandatory detention under § 1225(b)(1) to apply, a noncitizen must either (1) be "arriving in the United States," § 1225(b)(1)(A)(i), or (2) have not been admitted or paroled into the U.S. and not have sufficiently shown at least two years of continuous presence in the United States, § 1225(b)(1)(A)(iii)(II).

Here, the NTA issued to Hernandez-Lugo does not charge him as an "arriving alien," (NTA at 15), so the Court does not find that Hernandez-Lugo is subject to § 1225(b)(1)(A)(i). He similarly does not fall under § 1225(b)(1)(A)(iii)(II) because the Court finds that the parole documentation that he submitted sufficiently demonstrates that he was "paroled" into the country on July 29, 2022 and therefore has been physically present in the United States for at least three years. (See Parole Auth., ECF No. 13-2) The Court has no reason to doubt the authenticity of this document. As a result, because Hernandez-Lugo is not arriving in the United States, was paroled into the U.S., and has been physically present for over two years, the Court finds that he cannot be subject to expedited removal or mandatory detention under 8 U.S.C. § 1225(b)(1).

      **b.**    **8 U.S.C. § 1231(a)**

Although the Government does not explicitly state that it relies on § 1231(a) in justifying Hernandez-Lugo's ongoing detention, it cites almost exclusively to cases that

involve § 1231(a) detention. (Answer at 12 (citing Zadvydas v. Davis, 533 U.S. 678 (2001); Rodriguez-Guardado v. Smith, 271 F.Supp.3d 331 (D.Mass. 2017); Julce v. Smith, No 18-10163-FDS, 2018 WL 1083734 (D.Mass. Feb. 27, 2018); Farah v. U.S. Att'y Gen., 12 F.4th 1312 (11th Cir. 2021))). For the reasons stated below, the Court finds that § 1231(a) does not govern Petitioner's detention.

Section 1231 is titled "Detention and removal of aliens ordered removed," and applies to noncitizens that have final orders of removal. 8 U.S.C. § 1231(a)(1)(B). Zadvydas, a case upon which the Government relies (Answer at 12), stands for the proposition that an individual with a final order of removal cannot be indefinitely detained. Zadvydas, 533 U.S. at 699. For the six-month presumption of reasonable detention under Zadvydas to apply, an individual must have been through removal proceedings, an IJ must have ordered removal, and the noncitizen's right of appeal must have terminated. See 8 U.S.C. § 1231(a)(1)(B). Without these conditions being fulfilled, however, there is no presumptively reasonable period of detention, as detention under an unlawful authority is inherently unreasonable.

Here, because Hernandez-Lugo has not been ordered removed, there is no presumptively reasonable period of detention barring habeas review, and he cannot be detained under the authority of § 1231. See Maldonado, 2025 WL 2968042, at *10 ("Where [Petitioner] is not subject to a removal order, and his detention is not governed by § 1231, the presumptively reasonable six-month period of Zadvydas is inapplicable to [Petitioner]'s Petition. For all of these reasons, the Court will grant the Petition.").

9

### c.     8 U.S.C. §§ 1226(a) and 1225(b)(2)

The Court next considers whether a review of the relevant statutes supports detention under § 1226(a) or § 1225(b)(2). If Hernandez-Lugo is detained under 8 U.S.C. § 1225(b)(2), his detention is mandatory. If he is not, his detention falls under the 8 U.S.C. § 1226(a) detention framework, and he is entitled to a bond hearing before an IJ. For the reasons set forth below, the Court finds that a plain reading of the statute makes clear that Hernandez-Lugo is not an "applicant for admission" under § 1225(b)(2)(A) and instead falls under the discretionary detention category under § 1226(a) as a noncitizen who "[o]n a warrant" was "arrested and detained" during the pendency of removal proceedings under § 1229a. See generally 8 U.S.C. § 1226(a).

The Government argues that Hernandez-Lugo is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Answer at 8–9). In relevant part, that provision provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and contains subsections related to stowaways, crewmen, and noncitizens arriving from contiguous territories. 8 U.S.C. § 1225. It also contains provisions authorizing officers to "board and search any vessel, aircraft, railway car, or other conveyance in which they believe aliens are being brought into the United States," and references detention authority at airports of arrival. 8 U.S.C. § 1225(d).

10

Hernandez-Lugo argues instead that his detention is subject to 8 U.S.C. § 1226. (Pet. ¶¶ 26–34). This section is entitled "Apprehension and detention of aliens," and contains subsection § 1226(a), "Arrest, detention, and release," stating that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The regulations require that when "ICE determines pursuant to § 1226(a) that a noncitizen will be detained, that individual may seek review of the detention decision by requesting a bond hearing before an immigration judge." Maldonado de Leon, 2025 WL 2968042, at *5 (citing 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d)).

When engaging in statutory interpretation, courts must "begin with the plain language" of the statute. Hately v. Watts, 917 F.3d 770, 784 (4th Cir. 2019) (quoting In re Total Realty Mgmt., LLC, 706 F.3d 245, 251 (4th Cir. 2013)). "To determine a statute's plain meaning," courts "not only look to the language itself, but also 'the specific context in which the language is used, and the broader context of the statute as a whole.'" Id. (quoting In re Total Realty Mgmt., LLC, 706 F.3d at 251).

Considering the plain language of §§ 1225(b)(2) and 1226(a), the Court finds that § 1226(a) plainly applies to Hernandez-Lugo. He was "arrested and placed into removal proceedings" after an "I-200 'Warrant for Arrest of Alien' was issued," (Answer at 2–4), the framework described in § 1226(a). No such warrant or arrest provisions exist in § 1225(b)(2), further bolstering this finding. Further, the I-200 warrant explicitly states that it authorizes immigration officials "pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act" to "arrest and take into custody

11

for removal proceedings" the named noncitizen. (Warrant at 1 (emphasis added)); see also Maldonado de Leon, 2025 WL 2968042, at *6 (quoting the I-200 warrant); Pineda Velasquez, 2025 WL 3003684, at *4 (same). "Where section 236 of the INA is codified at 8 U.S.C. § 1226, and that authority is explicitly referenced in [I-200 warrants]," it becomes clear that § 1226 is the applicable statute governing such detention. Maldonado de Leon, 2025 WL 2968042, at *6; see also Pineda Velasquez, 2025 WL 3003684, at *10.

In looking at the interplay between the various subsections of § 1225, the Court has found that § 1225(b)(1) is inapplicable to Hernandez-Lugo, as it solely addresses those who are "arriving" in the United States or those who have been here for a short period of time. See, e.g., 8 U.S.C. § 1225(a)(2) ("An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer."). Section 1225 repeatedly refers to individuals "arriving" in the United States throughout the subsections and references vehicles "bringing [aliens] to the United States," "airport[s] of arrival," and "port[s] of entry." See generally 8 U.S.C. § 1225. This focus throughout § 1225 on the actual place and manner of arrival of noncitizens to the United States similarly bolsters Hernandez-Lugo's arguments that § 1226, and not § 1225, is the correct statutory authority here, where Hernandez-Lugo has been present in the United States for at least three years, (Parole Authorization at 1).

Additionally, the recent legislative history of the INA further supports that § 1226 applies here. Earlier this year, Congress amended § 1226 via the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), in a manner that renders the Government's interpretation of § 1225(b)(2) superfluous. This amendment, codified at 8 U.S.C. § 1226(c)(1)(E), mandates

detention for noncitizens who are inadmissible under certain inadmissibility grounds who have been charged with or convicted of certain crimes. 8 U.S.C. §§ 1226(c)(1)(E)(i)–(ii). Other district courts have relied on this recent amendment in finding § 1226(a) to be the proper detention authority for noncitizens in Hernandez-Lugo's position. See, e.g., Pizarro Reyes, 2025 WL 2609425, at *7 ("[T]he recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well.").

As has been previously recognized in Maryland, although § 1225(b)(2) "applies to an 'applicant for admission,' that is not the only operative language in [the statute]. Rather, the statute conditions mandatory detention on a determination by an immigration officer that 'an alien seeking admission' is not clearly entitled to be admitted." Maldonado de Leon, 2025 WL 2968042, at *7 (citing 8 U.S.C. § 1225(b)(2)(A)). "The requirement that the alien at issue be 'seeking admission' necessarily limits the applicability of this provision to one who, at the time of the detention, was seeking or attempting to gain 'lawful entry . . . into the United States after inspection and authorization by an immigration officer.'" Id. (citing 8 U.S.C. § 1101(a)(13)(A)). As found in Maldonado de Leon, here, "Respondents' citation to cases that discuss 'admission' or 'seeking admission' in different contexts do[es] not alter the Court's reading of the plain language of this statutory provision." Id.

Finally, the BIA's recent decision in Yajure Hurtado is not persuasive nor binding on this Court. See, e.g., id. at *8; Pineda Velasquez, 2025 WL 3003684, at *6. Under Loper Bright, it is within the federal court's power to "exercise independent judgment in determining the meaning of statutory provisions," and courts "need not . . . defer to an

13

agency interpretation of the law simply because a statute is ambiguous." 603 U.S. at 394, 413. Further, "where Respondents' new interpretation of these detention provisions so as to require mandatory detention of all inadmissible noncitizens runs counter to nearly 30 years of government immigration practice, the BIA's recent about-face in Matter of Yajure-Hurtado carries very little weight." Maldonado de Leon, 2025 WL 2968042, at *8. Accordingly, the Court finds that Hernandez-Lugo's detention should be under the framework of 8 U.S.C. § 1226(a) and that he is not an "applicant for admission" subject to § 1225(b)(2).

### d.    Prior Practice and Usage of § 1226(a)

This finding that Hernandez-Lugo is not an "applicant for admission," and is therefore subject to discretionary detention and entitled to a bond hearing under § 1226(a), is consistent with the decades-long history of the application of § 1226(a).

The Supreme Court has recognized § 1226(a) as "the default rule" for noncitizens who were inadmissible at the time of entry and detained "once inside the United States." Jennings, 583 U.S. at 288. Similarly, in Johnson v. Guzman Chavez, 594 U.S. 523 (2021), the Supreme Court outlined that "if the Department of Homeland Security (DHS) discovers that an alien is living in the United States without authorization, it may initiate removal proceedings," that "DHS may arrest and detain the alien 'pending a decision on whether the alien is to be removed from the United States,'" and that these individuals "who are arrested and detained may generally apply for release on bond or conditional parole." Id. at 527–28 (citing 8 U.S.C. § 1226(a)). Under existing Supreme Court precedent, Section 1226 "applies to aliens already present in the United States." Jennings, 583 U.S. at 303

14

(emphasis added). The Government's argument that Hernandez-Lugo is an "applicant for admission" subject to mandatory detention under § 1225(b)(2), (Answer at 8–12), is inconsistent with decades-long precedent on this topic.

Further, the Government's reliance on the Jennings Court's statement that § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," (Answer at 13 (quoting Jennings, 583 U.S. at 287)), is misplaced. In the first part of the Jennings opinion, the Court broadly described the differences between individuals subject to § 1225(b)(1) and § 1225(b)(2) and noted that the latter, § 1225(b)(2), is the "catchall provision" for noncitizens seeking admission at the "Nation's borders and ports of entry," while § 1226(a) is the "default rule" for noncitizens "once inside the United States." Jennings, 583 U.S. at 286–88. The Court recognized that § 1226(a) authorizes "the Government to detain certain aliens already in the country pending the outcome of removal proceedings." Id. at 288–89.

Based on this precedent, the Court here finds that Hernandez-Lugo is subject to the discretionary detention and bond provisions under § 1226(a) and that detention under § 1225 is improper.

4. **Fifth Amendment Claim**

Because the Court finds that Hernandez-Lugo is detained and entitled to a bond hearing under the statutory authority of § 1226(a), the Court declines to decide the merits of his Fifth Amendment claim.

15

C.   **Government's Motion to Dismiss**

After a Petition for a Writ of Habeas Corpus is filed, the proper response by the Respondent is the filing of an Answer, to be followed by a Reply filed by the Petitioner. See Rules 2, 5, Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"); see also Habeas Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a).").

There is no corresponding action or motion to dismiss under the Habeas Rules. Although the Federal Rules of Civil Procedure "may" be applied to a habeas petition, see Habeas Rule 12, the Court ordinarily does not apply Federal Rule of Civil Procedure 12, which governs the filing of a motion to dismiss, to a habeas petition because such a motion is effectively duplicative of an Answer to a Petition, in which all relevant arguments that could be made on such a motion can and should be made.

Here, where the Motion to Dismiss was simultaneously Respondents' Answer through a single brief addressing both the Motion and the Answer, (see ECF No. 12), the Court finds that (1) there was no need for a Motion to Dismiss; and (2) the Court's resolution of the Petition necessarily resolves the Motion to Dismiss. Because the Court has denied Respondents' jurisdictional and procedural arguments and granted the Petition, the Government's Motion to Dismiss will be denied. See Maldonado de Leon, 2025 WL 2968042, at *11.

### III.  CONCLUSION

For the foregoing reasons, the Court will GRANT Hernandez-Lugo's Petition (ECF No. 1) in part and DENY it in part. The Petition will be granted to the extent explained in this Opinion and accompanying Order and denied as to all other respects. The Court will DENY the Government's Motion to Dismiss (ECF No. 12). A separate Order follows. Entered this 25th day of November, 2025.

                                                            /s/
                                      George L. Russell, III
                                      Chief United States District Judge